# Brown *et al. v.* E. Van Winkle Gin & Machine Works.

*Bill in Equity to enforce Specific Performance of Contract.*

1. *Specific performance; contract to execute mortgage cannot be specifically enforced without separate equity.*—A contract, whereby one of the parties thereto obligates himself to secure a deed by a mortgage, cannot be specifically enforced in a Court of Equity without the allegations and proof of some fact showing the case to be one of equitable cognizance, or that the remedy at law is inadequate; and this is true although the property that was claimed to be included in the mortgage was both personal property and real estate.

APPEAL from the Chancery Court of Clarke.

Heard before the Hon. THOMAS H. SMITH.

The bill in this case was filed by the E. Van Winkle Gin & Machine Works against the appellants, E. N. Brown and N. W. L. Brown, and sought the specific performance of a contract. The contract sought to be specifically enforced is set out *in hacc verba* in the opinion, and the prayer of the bill is also set out in the opinion.

The defendants demurred to the bill, among others, upon the following grounds: (1.) Because the bill of complaint fails to allege that respondents are insolvent. (2.) Because the bill of complaint fails to allege that complainant has no adequate remedy at law for the demand sought to be enforced. (3.) Because the facts alleged in the bill show that complainant has an adequate remedy at law by action for damages for a breach of the alleged contract. Defendants also moved to dismiss the bill for want of equity. Each of the grounds of demurrer and the motion to dismiss the bill, were overruled.

The other facts in the case necessary to an understanding of the decision upon the present appeal are sufficiently stated in the opinion.

[Brown *et al.* v. E. Van Winkle Gin & Machine Works.]

On the final submission of the .cause upon the plead-
ings and proof, the Chancellor decreed that complain-
ant was entitled to the relief prayed for, and that it was
the duty of defendants to have executed the first mort-
gage upon the machinery purchased from the complain-
ant and upon the four acre tract of land described upon
which the machinery was erected; and, it appearing to
the Court that the defendants had failed and refused to
execute such mortgage, and the law day upon which
said mortgage should have matured having expired, it
was ordered, adjudged and decreed that complainant
was entitled to, and also decreed to have a first lien upon
said machinery, buildings and lot for the payment of
the sum remaining due to it from the defendants; and
it was further ordered that if the amount ascertained to
be due was not paid within thirty days from the date
of the decree, the Register should sell said machinery,
buildings and lot, etc.

The defendants appealed, and made many assign-
ments of error. The first, second and third assignments
of error were based respectively upon the Court's over-
ruling the first, second and third grounds of demurrer,
respectively. The 13th assignment of error is based
upon the Chancellor's overruling the motion to dismiss
complainant's bill for want of equity. The 14th, 15th,
16th and 17th assignments of error, respectively, were
based upon the final decree in granting the relief prayed
for, and in the Chancellor's decreeing that the complain-
ant was entitled to a specific performance of the con-
tract, and was, therefore, entitled to have had the de-
fendants execute a note and mortgage to the complain-
ant.

LACKLAND & WILSON, for appellants.—While the
court has jurisdiction to decree specific performance of
a contract, it will never do so unless a proper case is
presented. As to whether a proper case is presented,
depends upon the adequacy of the remedy in a court of
law to fully meet the ends of justice.

(a) The remedy at law, an action on the contract
for the alleged balance of purchase money due for the

machinery, is not inadequate for any reason, nor is it doubtful or uncertain. The defendants are solvent, and no difficulty would be encountered in making the money under an execution on a judgment at law.

(b) An action at law for damages for the alleged breach of the contract would put the parties in a situation as beneficial to them as if the agreement had been specifically performed. All they would have acquired by the performance of the contract would be a mortgage for the security of the balance of the purchase money, or, in other words, the collection of the said balance of said purchase money. All they are after is the balance claimed to be due for the machinery.

All this they can fully receive by the recovery of a judgment, the issuance of an execution thereon, and having it levied upon the property of defendants.

(c) There is nothing in the contract sought to be enforced showing that it is of such a nature that performance alone will answer the ends of justice. It is a plain simple contract for the delivery and erection of machinery by the party of the one part and the payment of the purchase money by the other party, said purchase money to be secured by the execution of a mortgage.

(d) There are no special circumstances attending the contract, or embraced on its terms, which operated as an inducement to the making of a contract which a court of law could not consider in an action in damages for its breach, and afford complete relief.—See *Comer v. Bankhead*, 70 Ala. 493 (3 hn. 496); *Dilburn v. Youngblood*, 85 Ala. 449; *Electric L. Co. v. Mobile, et al.*, 109 Ala. 190; *Jones v. Deebles*, 32 So. Rep. 60 (62); 133 Ala. 290.

Unless specific performance is strictly equitable, the parties will be remitted to their *legal* remedies. If there has been a failure, or a substantial failure, or essential failure, of the consideration upon which the promise is based it is never decreed.—*Gentry v. Rogers*, 40 Ala. 442; *Hurst v. Thompson*, 73 Ala. 158 (1 hn. 159); *Friedman v. McAdory*, 85 Ala. 61; *Haggarty v. Elyton Land Co.*, 89 Ala. 428 (433); *S. & N. R. R. Co. v. H. A.*

[Brown *et al.* v. E. Van Winkle Gin & Machine Works.]

& B. R. Co., 119 Ala. 105 (120-121); *Bogan v. Daughdrill*, 51 Ala. 312 (314-315); *McDonald v. Walker*, 95 Ala. 172; *Brown v. Weaver, Admr.*, 113 Ala. 228.

GREGORY L. & H. T. SMITH, *contra.*—*An agreement* on the part of a purchaser to execute a mortgage upon the property purchased to secure the purchase money can be specifically enforced without an allegation of insolvency.

If it be conceded that complainant performed its contract, it is entitled to have contract for mortgage executed.—*Irvine v. Armstrong*, 31 Minn. 216; *Hicks v. Teuk*, 72 Mich. 311; *Triebut v. Burgess*, 11 Md. 452; *Ogden v. Ogden*, 4 Ohio St., 182; *Joynes v. Statham*, 3 Ark. 389; *Young v. Peachy*, 2 Ark. 258; *Walker v. Walker*, 2 Ark. 99; *Stirling v. Klepsettle*, 24 Ind. 94; 87 Am. Dec. 309; *King v. Williams*, 50 S. W., 695; *Cole v. Cole*, 41 Md. 301; *Dean v. Anderson*, 34 N. J. eq. 496; *Stoddard v. Hart*, 23 N. Y. 556. An agreement to execute a mortgage to seller of personal property will be specifically enforced.—*Jones v. Brewer*, 1 N. J. eq. 630; *Walker v. Barnes*, 3 Madd. 247; *Seaton v. Twyford*, L. R. 11 eq. 591; *Ashton v. Carrigan*, L. R. (13 eq.) 76; *Herman v. Hodges*, L. R. (16 eq.) 18; *Humble's Case*, 11 Irish Ch. 132; *Hunter v. Langford*, 2 Moll. 272; *Strand's Music Co. Case*, 3 De. G. J. & S. 147; *Gould v. Hamilton*, 5 Grant's Ch., 192; *McKay v. Reed*, 1 Ch. Cham. 208.

Specific performance of a contract touching real estate is a matter of right.—*Chambers v. Ala. Iron Works*, 67 Ala. 358.

SIMPSON, J.—The original bill in this case was filed by appellee (complainant) against appellants (defendants) upon the following contract: "This contract, made this the twelfth day of June, 1899, between the E. Van Winkle Gin & Machine Works of Atlanta, Ga., of the first part, and E. N. Brown and N. W. L. Brown, of Atlanta, Ga., of the second part, Witnesseth, The parties of the first part agree to build and deliver F. O. B. cars in Atlanta Ga., certain machinery for the

manufacture of Cotton Seed Oil and Meal, according to
the accompanying specifications which form a part of
this contract. The parties of the first part also agree
to have this machinery loaded on cars in Atlanta, Ga.,
not later than the 5th day of October, 1899. The par-
ties of the first part further agree to send one competent
workman to erect said machinery when it reaches its
destination, for actual operation, and to submit plans
and specifications for the erection of the necessary
buildings as provided for in the specifications of this
contract; and do guarantee this machinery to make no
less than forty (40) gallons of oil per ton of good sound
seed, and to work not less than thirty-five (35) tons of
sound cotton seed in twenty-four hours. In consideration
of the above, the parties of the second part agree to pay
to the parties of the first part the sum of ten thousand
and five hundred ($10,500) dollars, as follows: One-
third on receipt of bills of lading, one-third when mill
is started in operation, one-third on November 1st,
1900, last payment to be secured by first mortgage note
on the machinery, buildings and four acre site thereof,
when the machinery is put in successful operation in
making oil and meal, at which time they also agree to
pay in cash the board and railroad fare of workmen
sent for erection of machinery. Note for deferred pay-
ment is to bear interest from starting of mill at eight
(8 per cent.) per cent per annum, right being reserved
to take up note before maturity and interest to stop
when note is paid. This contract is subject to fires,
labor strikes, railroad delays, inability to get material,
and acts of Providence over which we have no control.
The parties of the second part further agree to insure
the plant in favor of the parties of the first part as far
as their interest may appear. The parties of the second
part also agree not to make any contracts of any kind
in favor of other parties against the parties of the first
part, and to pay no bills against the parties of the first
part without their full knowledge and consent in writ-
ing. The parties of the second part also agree to fur-
nish all necessary buildings, land, motive power and all
foundations for the machinery and water for the suc-

cessful operation of the machinery, not later than the 5th day of October, 1899, and when the machinery is ready for operation, to furnish all oil, press cloth, fuel and labor to operate the same. And further agree that the machinery is to be operated by men selected by the parties of the first part for ten days in test of its guarantee as to capacity and output of oil and meal products. Whereunto we have this day set our hands and seals.

E. Van Winkle Gin & Machine Works,
Mell R. Wilkinson, Sec'y. & Treas'r.
Of first part.

E. N. Brown and N. W. L. Brown,
per N. W. L. Brown, Of second part."

Said bill prayed, 1st; that defendants be restrained from creating any mortgage or lien upon said buildings, machinery and real estate; 2d, to require them to keep said plant insured for $3,500.00 for the benefit of complainant; 3d, to require appellants, should the hearing of this cause be had earlier than November 1st, 1900, to execute in proper form their promissory note for said amount and to execute the mortgage (mentioned in the contract) ; 4th, or should the cause not be heard prior to November 1st, 1900, to cause the indebtedness to be ascertained and the property referred to to be sold for its payment; 5th, that appellants pay the balance due them on account of fifty feet of conveyor subsequently furnished to defendants and on account of services, expenses, board and railroad fare for the workmen sent to erect said machinery.

Taking up the assignments of error in the order adopted by counsel for appellant, in his brief: The 1st, 2d, 3d, 13th, 14th, 15th, 16th and 17th assignments, raise the question of the equity of the bill, especially referring to the necessity of alleging and proving that defendant was insolvent, or some other circumstance going to show that the remedy at law was not adequate.

The jurisdiction of courts of equity to enforce specific performance of contracts arose from the fact that the common law remedies are often inadequate, and the extraordinary power of a court of chancery was exer-

cised only where there was no remedy at common law, or where there was a remedy, but it was inadequate. Fry on Specific Performance, § 9, p. 12; *Comer v. Bankhead,* 70 Ala. 496.

The expression is sometimes found in the books, that specific performance will be granted, on all contracts relating to lands, and that it will not be granted on contracts relating to personal property, but this expression is inaccurate. An examination of the authorities will show that they all rest on the original fundamental principle that the relief will be granted only where there is no adequate remedy at law. The principle was early recognized and is now generally adopted, that, in contracts, *for the sale* of lands, where either the vendor refuses to convey or the vendee refuses to consummate, the remedy, by suit at law for damages is not adequate, because a man buys a piece of land, because he wishes that particular property, and, in most cases, it has a special value to him which cannot be expressed in dollars; while in regard to contracts for the sale of personal property the general principle is that personal property has a definite value in the market and can always be purchased with the money, so that the relief will not be granted as to personal property unless some special equitable grounds be shown, as that the chattel is unique, or has a *"pretium affectionis,"* etc.—2 Story's Eq. Jur. (13 ed.) § 716, 717, 717a, 746; 2 Beach, Modern Eq. Juri. 597-8-9; Waterman on Specific Performance, § 12, 15, 16, 18; Fry on Specific Performance, §§ 50, 57; *Moses v. Scott,* 84 Ala. 608, 611.

But when we come to apply the equitable remedy of specific performance to a contract, by which one party has agreed to secure a debt, shortly to become due, the reason which applies to *sales* of real estate wholly fails. The mortgage is but a means of securing the debt, and if a party can collect his money, by a direct suit at law his remedy at law is complete. He has recovered just what he would have recovered, if he had obtained his mortgage and foreclosed it. We do not mean to say that the court will not, in any case, decree specific performance of a contract to secure a debt by a

mortgage, but only that it does not follow, as a matter of course, as in the case of a contract for the sale of real estate.

Hence, in order to obtain this relief the bill must allege and the evidence must show the facts which call for equitable interposition in the particular case. As, for instance, that the defendant is insolvent, or that the mortgage was contracted for as an investment which was to run for years, so that to pay the complainant his money, which was just what he did not wish, as in *Irving v. Armstrong,* 31 Md. 216, where the party had released a mortgage of this character, in order to allow a first mortgage to be made, with the agreement that his twelve year mortgage was to be reinstated, or in *Shockley v. Davis,* 17 Ga. 177, where a man in "failing circumstances" induced another to become surety for him, in a matter in which the liability might continue for an indefinite period; or in *Triebert v. Burgess,* 11 Md., where the court say that there was no reasonable ground for believing that he could secure payment in any other way, or in *Ogden v. Ogden et al.,* 4 Ohio St. 182, where a fraud was attempted by the defendants clandestinely obtaining possession of the deed, which was not to have been delivered until the mortgage was delivered, or in *Lawrence v. Lawrence,* 42 N. H. 109, in which a mortgage was reinstated, providing for the maintenance of mortgagee and wife.

The case of *Richardson & May v. Hamlett & Wife, et al.* 33 Ark. 237, merely decides that the party did not lose his vendor's lien, by an agreement to make the mortgage which he did not make, and that the law considered that as done which should have been done. No question was raised in that case as to what allegations were necessary.

There are a number of cases where the matter is mentioned incidentally, or it is stated in general terms that the court will decree specific performance of an agreement to make a mortgage; but, in those cases, no point was made as to what allegations were necessary on the subject of the inadequacy of the legal remedy. So that these cases (some of which are cited by the learned

counsel for the appellee) really· throw no light on the question as to what allegations are necessary to authorize equitable relief in such cases.

We have shown that, taking into consideration the "*ratio legis*," there is no possible reason why a contract to secure a debt by mortgage should occupy any higher position equitably than a contract to convey personal property, then it follows, necessarily, that such a contract, like a contract to convey personal property, can not be specifically enforced, without allegation and proof of some fact showing the case to be one of equitable cognizance, or that the remedy at law is not adequate.

This court refused to grant specific performance of a contract to transfer a note and mortgage because "the bill did not allege the insolvency of defendants, nor show any injury which cannot be fully compensated in damages in a suit of law."—*Dilburn v. Youngblood & Co.* 85 Ala. 449, 450-51.

The court will not, in any case, decree specific performance when the complainant has an adequate remedy at law.—*Electric Lighting Co. of Mobile v. Mobile & Sp. Hill Ry.*, 109 Ala. 191, 195; *Maston Jones & Co. v. Peebles*, 133 Ala. 290, 299.

In this case the remedy at law was complete, for when the contract to give the security was broken the complainant could have sued at once for its breach and the measure of his damages would have been the amount of the debt which was to have been secured by the mortgage.—*Barron v. Mullen*, 21 Minn. 374; *Hanna v. Mills*, 34 Am. Dec. 216; *Carnahan v. Hughes*, 108 Ind. 225; *Hoover v. Cary*, 86 Iowa 494; *Crawford v. Avery*, 35 Miss. 205; *Stephenson v. Repp.* 47 Ohio, St. 551; *Wheeler v. Harrah*, 14 Oregon 325; *Foster v. Adams*, 6 Am. St. Rep. 120; *Mauton v. Gammon*, 7 Ill. App. 201.

In the case of *Fullington et al. v. Kyle Lumber Co.*, 139 Ala. 242, 245, this court granted relief only because it was a motion to dismiss for want of equity, under which all amendable defects are considered as amended, and the bill did state that the injury could not be adequately compensated in damages, the court stating that;

under the presumption, in a motion to dismiss, it was not necessary to allege insolvency, since "though he be solvent, compensatory damage could not be recovered of him."

It is shown by the bill and exhibit that the last payment, which was to be secured by mortgage was due Nov. 1, 1900, and the prayer of the bill is for specific performance if the hearing shall "be had earlier than Nov. 1, 1900, and if it should not be heard prior to that time," then that the property be sold to satisfy the indebtedness claimed.

The final decree in the case was on December 10, 1902, so that it is a bill purely and simply to collect a debt. Where a bill is simply to collect money the court will not decree specific performance, unless some grounds for equitable interposition are alleged and prayed. *Kaufman's appeal,* 55 Penn. 383; *Dech's appeal,* 57 Penn. 467.

While a few cases may be found which seem to have lost sight of the reason on which this equitable remedy is based, yet the distinction seems to be so clearly laid down by the great weight of authority, and by the best considered cases, that we feel compelled to hold that, under the allegations of the bill in this case, the demurrers and motion to dismiss, above referred to were well taken, and the court should not have granted the prayer of the bill.

It may be that it would be a wise policy to allow courts of equity to decree specific performance in the enforcement of all contracts, without regard to the remedy at law, but that is a matter which addresses itself to the legislative mind and not to the judiciary which must be governed by the principles of the law as they have come down to us.

A portion of the property, which is sought to be made subject to the mortgage, is personal property and a portion real estate, but we have not deemed it necessary to treat them separately, as, under the view which we take, the same principle applies to both; but if the court should decide that specific performance could be declared as to the real estate and not as to the personal

property, it is difficult to point out just how the decree could be rendered, for, doubtless, some parts of the machinery would be so fixed to the realty as to become a part of the real estate, while others would remain personal property, and there is nothing in the evidence, by which the court could separate them. The court is not to be understood as expressing an opinion on any other right or remedy of the complainant, except the right to a specific performance of this contract.

It results from the view we take of the points under discussion that the case will have to be reversed. Hence, it is unnecessary to go into the other points raised by the assignments of error.

The decree of the court is reversed and a decree will be here entered dismissing the bill without prejudice.

McCLELLAN, C. J., TYSON and ANDERSON, J.J., concurring.

